**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEVAR HOARD,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DESIGNBLENDZ LLC,**<br><br>**Defendant.** | **CIVIL ACTION NO. ____________**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff Levar Hoard, by and through his attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages and other relief on behalf of Plaintiff Levar Hoard (hereinafter "Plaintiff" or "Mr. Hoard"), a former employee of Designblendz LLC (hereinafter "Designblendz," "DB," or "Defendant"). Despite his loyalty and consistent performance, Mr. Hoard was subjected to discrimination and harassment on the basis of his race, age, and disabilities or perceived disabilities, and to retaliation for complaining about discrimination and harassment and for seeking accommodation of his disabilities, culminating in his wrongful termination on or about September 25, 2025. Additionally, Designblendz promised Mr. Hoard a bonus as part of his compensation to induce him to accept employment and relocate to Philadelphia, upon which he reasonably relied, and then failed to pay Mr. Hoard that earned bonus in violation of the Pennsylvania Wage Payment and Collection Law and Pennsylvania common law, in addition to terminating him after less than three months of employment.

2. This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq. ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq. ("WPCL"), and the common law of the Commonwealth of Pennsylvania.

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On December 23, 2025, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On June 25, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

[1] It has been less than one year since Plaintiff dual-filed his EEOC Charge as a Complaint with the PHRC. Mr. Hoard will seek to amend his Complaint in this matter once he has exhausted administrative remedies with respect to his claims pursuant to the PHRA.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendant in this jurisdiction.

## PARTIES

9. Plaintiff Levar Hoard is an adult African American, male citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10. Mr. Hoard is forty-seven (47) years old and within the class of individuals protected against discrimination by the ADEA.

11. Mr. Hoard is a qualified individual with a disability within the meaning of the ADA.

12. Mr. Hoard has well-documented disabilities, including a severe visual impairment (he is fully and legally blind in his left eye), a serious autoimmune disorder, and a life-threatening cardiovascular condition.

13. Mr. Hoard's disabilities affect major bodily functions and substantially limit one or more major life activities.

14. Defendant Designblendz LLC ("Designblendz") is a company located at 4001 Main Street, Suite 203, Philadelphia, Pennsylvania 19127.

15. At all relevant times, Defendant is and has been an employer employing more than twenty (20) employees.

16. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

17. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

18. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

19. At all relevant times hereto, Plaintiff was an "employee" of Defendant within the meaning of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

20. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

21. Defendant is an "employer" and/or "person" within the meaning of the WPCL.

22. This Honorable Court has personal jurisdiction over the Defendant.

**FACTS**

23. On or about July 7, 2025, Mr. Hoard began his employment with Designblendz in the position of Creative Proposal Manager and Brand Strategist, a role that required him to relocate from Chicago, Illinois to Philadelphia, Pennsylvania at significant personal expense.

24. Throughout his employment with Designblendz, Mr. Hoard performed his duties in an exemplary, professional, and diligent manner, as was well known to his colleagues.

25. Despite his strong performance and deep loyalty to Designblendz, Mr. Hoard was subjected from the outset of his employment to ongoing discrimination and harassment based on his race, age, and disabilities or perceived disabilities, and to retaliation after raising concerns

regarding discrimination and a hostile work environment and after seeking accommodation of his disabilities, culminating in his wrongful termination on or about September 25, 2025.

26. Prior to accepting employment with Designblendz, Mr. Hoard left established professional work and declined higher-paying offers, seeking stable employment with adequate health insurance coverage to manage his disabilities.

27. Prior to accepting employment with Designblendz, Mr. Hoard was living and working in Chicago and relocated to Philadelphia in order to accept the position based on a number of assurances he received, including the promise of a bonus described below.

28. Mr. Hoard also turned down other employment opportunities, including those with higher rates of pay than the base pay offered by Designblendz.

29. To induce Mr. Hoard to accept the position with Designblendz, and to relocate from his home in Chicago to Philadelphia, Designblendz promised to make up the difference between Mr. Hoard's requested compensation of $120,000 per year and the $110,000 he was offered with a $10,000 bonus to be paid in the fall.

30. Designblendz offered Mr. Hoard $3,500 in moving assistance, which covered only a small portion of his relocation costs, and an additional $10,000 bonus to compensate for the difference between his desired salary of $120,000 and the $110,000 offered. This bonus, agreed to be paid in Fall 2025 (beginning September 22, 2025), was never paid.

31. In reliance upon Designblendz's promise of the $10,000 bonus, and the other assurances made to him, Mr. Hoard left his established employment in Chicago, declined higher-paying opportunities, and relocated to Philadelphia at significant personal expense to accept the position with Designblendz.

32. From the beginning of his employment, Mr. Hoard was subjected to race-based discrimination and harassment.

33. He was the only African American employee at the company.

34. Nadine Downie, a Principal at Designblendz, regularly directed unwarranted and differential treatment toward Mr. Hoard, including verbal harassment, public criticism, condescension, denial of meetings, unjustified delays, denial of collaboration, and other conduct not directed toward Defendant's non-African American employees.

35. Mr. Hoard's work colleagues confirmed to him that he was being treated more harshly than non-African American employees, and confirmed that Ms. Downie could easily threaten Mr. Hoard's job security and have him fired because she managed high-value accounts, including the PECO Energy account, and that her personal wishes would prevail over Mr. Hoard's expressed concerns.

36. Mr. Hoard reported the racial discrimination and hostile work environment to his supervisor, Brian Corcodilos, on multiple occasions, including in writing numerous times.

37. Mr. Corcodilos took no corrective action each time Mr. Hoard complained. Instead, Mr. Corcodilos dismissed Mr. Hoard's complaints, stating that Ms. Downie would eventually "warm up to him," despite the ongoing discriminatory conduct that was affecting Mr. Hoard's ability to work effectively and maintain a positive mental attitude.

38. Mr. Corcodilos' refusal to address these complaints, combined with his supervisory role, renders Designblendz responsible for the continuation of the discriminatory and hostile work environment.

39. Mr. Hoard was also subjected to age-based discriminatory comments.

40. Mr. Corcodilos made repeated references to preferring younger staff and the ease of managing them, noting that they "didn't talk back as much."

41. The majority of Defendant's employees were substantially younger than Mr. Hoard, including Mr. Corcodilos himself.

42. These comments were made in an intimidating manner and contributed to the hostile environment, causing Mr. Hoard to feel undermined and devalued despite his extensive experience.

43. Defendant's hostile work environment, its excessive work demands on Mr. Hoard (including overnight work with no rest), and frequent harassment significantly worsened Mr. Hoard's disabilities.

44. Between approximately September 15 and September 25, 2025, Mr. Hoard's autoimmune disorder reactivated from its dormancy and rapidly escalated, causing open skin lesions, fissures, bleeding, and the deterioration of the vision in his one functioning eye due to prolonged and intense optical strain.

45. Mr. Hoard sought emergency medical leave and treatment and was required to begin a costly specialty medication that he must now take indefinitely, during a period when Defendant had already acted to end his health coverage.

46. Mr. Hoard informed Defendant in writing that he was in need of medical leave for his disabilities and in order to rest and recover from unreasonable demands from Designblendz that required Mr. Hoard to work overnight across multiple days with little to no sleep and no support from Designblendz to meet multiple deadlines.

47. He requested reasonable accommodations, including a brief medical leave and temporary schedule modifications to tend to his disabilities and recuperate from staying up all night to meet two concurrent project deadlines.

48. Despite informing Defendant in writing of his medical concerns and requesting reasonable rest time, no assistance or accommodation was provided.

49. Instead of engaging in the interactive process required under the ADA, Defendant ignored Mr. Hoard's requests and terminated Mr. Hoard during his period of protected medical leave.

50. On or about September 22, 2025, Mr. Hoard met with senior management and reported multiple professional irregularities and potential Errors & Omissions issues occurring within Designblendz.

51. Upon information and belief, the firm was actively facing a potential Errors & Omissions claim relating to a Falls Township, Pennsylvania government project, and Mr. Hoard raised concerns regarding other internal failures that could lead to potential future Errors and Omissions claims and Designblendz's impending failure to provide necessary documentation for a major government project submission for Delaware County, Pennsylvania and its requirements to meet required deadlines.

52. Mr. Hoard's written complaints about these issues, combined with his reports of discrimination and hostile work environment conditions, preceded his termination by only a matter of days, further supporting a claim of retaliation.

53. On or about September 25, 2025, just three days after submitting written complaints and requesting emergency disability-related accommodations, Designblendz terminated Mr. Hoard while he was on medical leave.

54. The temporal proximity between Mr. Hoard's protected activities and his termination strongly supports an inference of discriminatory and retaliatory intent.

55. After delivering months of high-quality work, with no formal training ever provided by Designblendz for his role and having never received a single performance evaluation, Mr. Hoard was terminated during a medical crisis and while on medical leave.

56. Defendant has provided no legitimate explanation for the termination, heightening the discriminatory animus in this case.

57. The absence of performance-related documentation, the timing of his termination, and Defendant's refusal to meaningfully address Mr. Hoard's concerns despite months of opportunities to do so further support Mr. Hoard's claims.

58. While still employed on paid medical leave, Defendant refused Mr. Hoard access to his personnel file despite his formal written request.

59. At the time of his termination, Mr. Hoard was offered only one week of severance, and his COBRA processing was improperly delayed.

60. Designblendz submitted inaccurate termination dates to the insurance provider, stating October 10, 2025 as his date of termination instead of the actual termination date of September 25, 2025, to cover up its latency and appear to be in compliance with the statutory thirty-day deadline.

61. Mr. Hoard was terminated only months after he relocated to Philadelphia to accept the position, and Designblendz never paid Mr. Hoard the promised $10,000 bonus.

62. As a result, Mr. Hoard was left without employment, without health insurance necessary to manage his disabilities, and without the promised compensation upon which he relied in relocating to Philadelphia.

63. In light of the circumstances outlined above, and given his treatment during his employment with Designblendz and the circumstances surrounding his termination, Mr. Hoard maintains that he was discriminated against and harassed on the basis of his race, age, and disabilities or perceived disabilities, was retaliated against for his complaints of discrimination and harassment, was retaliated against for seeking accommodations, and that his termination was a result of discrimination and retaliation.

64. Based on the foregoing, Mr. Hoard was subjected to discrimination and harassment on the basis of his race, age, and disabilities or perceived disabilities, and retaliated against for his complaints of discrimination and harassment and for seeking accommodations, in violation of the ADEA, the ADA, Title VII, and Section 1981.

65. Mr. Hoard has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

66. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Mr. Hoard severe emotional distress.

67. Defendant willfully violated the ADEA, the ADA, Title VII, and Section 1981, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated the ADEA, the ADA, Title VII, and Section 1981.

68. Mr. Hoard has suffered financial losses, which include, among other things, lost wages, the unpaid bonus, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

## COUNT I
## Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

69. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

70. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the ADEA.

71. Plaintiff is, and was at the time of his termination, over forty years of age, and was an individual within the class protected by the Age Discrimination in Employment Act.

72. In discriminating against and harassing Mr. Hoard because of his age, and in retaliating against Mr. Hoard for his complaints of discrimination and harassment, Defendant violated the Age Discrimination in Employment Act.

73. Defendant's violations were intentional and willful.

74. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

75. As the direct and proximate result of Defendant's violation of the Age Discrimination in Employment Act, Plaintiff Levar Hoard has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT II**
**The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.**

76. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

77. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

78. In discriminating against and harassing Mr. Hoard on the basis of his disability, and/or because Defendant regarded Mr. Hoard as disabled, in failing to accommodate Mr. Hoard's disability and refusing to engage in the requisite good-faith, interactive process, and in

retaliating against Mr. Hoard for seeking accommodation of his disability, Defendant violated the ADA.

79. Said violations were intentional and willful.

80. Said violations warrant the imposition of punitive damages.

81. As the direct and proximate result of Defendant's violations of the Americans with Disabilities Act, Plaintiff Levar Hoard has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT III
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.**

82. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

83. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

84. In discriminating against and harassing Mr. Hoard because of his race, and in retaliating against Mr. Hoard for his complaints of discrimination and harassment, Defendant violated Title VII.

85. Defendant's violations were intentional and willful.

86. Defendant's violations warrant the imposition of punitive damages.

87. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Levar Hoard has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning

power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT IV**
**Civil Rights Act of 1866, 42 U.S.C. § 1981**

88. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

89. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

90. In discriminating against and harassing Mr. Hoard on the basis of his race, and in retaliating against Mr. Hoard for his complaints about discrimination and harassment, Defendant violated Section 1981.

91. Said violations were intentional and willful.

92. Said violations warrant the imposition of punitive damages.

93. As a direct and proximate result of the unlawful employment practices engaged in by Defendant, Plaintiff has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

94. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

**COUNT V**
**Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq. ("WPCL")**

95. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as fully as though the same were set forth at length herein.

96. At all relevant times, Defendant Designblendz was an employer as defined by the WPCL.

97. At all relevant times, Plaintiff was an employee of Defendant Designblendz as defined by the WPCL.

98. To induce Mr. Hoard to accept employment and relocate to Philadelphia, Designblendz promised Mr. Hoard a $10,000 bonus as part of his compensation, to be paid in the fall of 2025, which constitutes a contract to pay wages pursuant to the WPCL.

99. Mr. Hoard accepted employment with Designblendz and performed his job duties, thereby earning the promised bonus.

100. Mr. Hoard's promised but unpaid bonus falls within the definition of wages contained in the WPCL.

101. Despite the foregoing, Designblendz has failed and refused to pay Plaintiff the earned but unpaid bonus he is due.

102. Designblendz has failed and refused to pay Mr. Hoard his earned wages for a period beyond thirty days after regularly scheduled paydays.

103. Mr. Hoard has demanded payment of his earned wages, but Designblendz has failed and refused to pay Mr. Hoard his earned but unpaid wages.

104. Designblendz has no good faith argument that Mr. Hoard is not due his earned but unpaid wages.

105. As a result of Defendant's failure to pay Plaintiff's earned wages due to him, Defendant violated the WPCL and the regulations promulgated thereunder.

106. By virtue of Defendant's violations of the WPCL, Plaintiff is entitled to recover from Defendant his unpaid wages, plus liquidated damages, interest, costs of suit and attorneys' fees and other such legal and equitable relief as the Court deems just and proper.

**COUNT VI**
**Promissory Estoppel/Detrimental Reliance**

107. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

108. Defendant Designblendz made promises to Mr. Hoard, including the promise to pay him a $10,000 bonus in the fall of 2025 as part of his compensation, and the promise of stable employment, in order to induce him to accept the position and relocate to Philadelphia.

109. In making these promises to Mr. Hoard, Defendant knew and reasonably expected to induce action or forbearance by Mr. Hoard, specifically, to leave his established employment in Chicago, decline other higher-paying opportunities, and relocate to Philadelphia to accept employment with Defendant.

110. Mr. Hoard reasonably relied upon these promises to his detriment by leaving his established employment in Chicago, declining a higher-paying offer, and relocating to Philadelphia at significant personal expense to accept employment with Defendant.

111. Defendant did not honor its promises. Defendant terminated Mr. Hoard only months after he relocated to Philadelphia to accept the position and failed to pay him the promised $10,000 bonus.

112. Mr. Hoard suffered damages as a result of his reasonable reliance upon Defendant's promises.

113. As the direct result of the aforesaid conduct engaged in by Defendant, Plaintiff Levar Hoard has sustained a loss of earnings, loss of the promised bonus, interest due thereon, and has incurred an obligation for attorneys' fees and costs.

114. Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT VII
**Breach of Implied Contract for Employment Based on Additional Consideration**

115. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

116. As set forth above, Mr. Hoard has alleged facts from which it can be determined that there was an implied contract for employment between Mr. Hoard and Designblendz based upon additional consideration.

117. In accepting employment with Designblendz, leaving his established employment in Chicago, declining a higher-paying offer, and relocating to Philadelphia at significant personal expense, Mr. Hoard provided additional consideration to Designblendz and suffered significant hardship beyond the ordinary services of an employee.

118. Based upon the promises made to Mr. Hoard, the parties understood that they were creating an implied contract for employment.

119. Designblendz's termination of Mr. Hoard without just cause, only months after he relocated to Philadelphia to accept the position, was a breach of the implied contract for employment between Mr. Hoard and Designblendz.

120. As a direct result of the unlawful conduct engaged in by Defendant, Plaintiff Levar Hoard has sustained a loss of earnings, loss of the promised bonus, severe emotional and

psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon.

121. Defendant Designblendz's conduct is without excuse or justification.

## PRAYER FOR RELIEF

122. Plaintiff Levar Hoard repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Levar Hoard respectfully requests that this Court enter judgment in his favor and against Defendant Designblendz LLC, and Order:

1. Appropriate equitable relief, including reinstatement or front pay;
2. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment, and retaliation;
3. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;
4. Defendant to pay Plaintiff his earned wages as required by the WPCL;
5. Defendant to pay Plaintiff punitive damages;
6. Defendant to pay Plaintiff liquidated damages;
7. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;
8. Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

9. Plaintiff be granted any and all other remedies available under the ADEA, the ADA, Title VII, Section 1981, the WPCL, and Pennsylvania common law; and

10. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff Levar Hoard hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103
(215) 569-2285

*Attorneys for Plaintiff Levar Hoard*

Dated: September 23, 2026